# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALTON CAUDELL, individually and on behalf of all persons similarly situated,** | : : : | |
| | : | *ELECTRONICALLY FILED* |
| **Plaintiff,** | : : | **Civ. A. No. 11-01523-JFC** |
| **vs.** | : : | **Judge Joy Flowers Conti** |
| **RDL ENERGY SERVICES, LP,** | : : | |
| **Defendant.** | : | |

## JOINT STIPULATION AND SETTLEMENT AGREEMENT

This Joint Stipulation and Settlement Agreement ("Agreement") is made and entered into by and among the Plaintiff Alton Caudell ("Plaintiff"), individually and on behalf of all persons similarly situated, as defined below, and Defendant RDL Energy Services, LP ("Defendant," "RDL," or the "Company").

**1.**     **DEFINITIONS**

1.1     "Action" means the above-captioned action.

1.2     "Administrative Costs" means the sum to be paid in connection with establishing a Qualified Settlement Fund, locating Potential Opt-In Plaintiffs, mailing the notices of settlement, receiving and processing Settlement Claim Certification and Consent to Join Settlement Forms, responding to Potential Opt-In Plaintiff inquiries, disbursing all amounts payable from the Qualified Settlement Fund, handling all tax reporting in connection with the settlement payments, and performing such other duties by the Settlement Administrator as the Parties may mutually direct.  Administrative Costs shall be deducted from the Total Settlement Amount and shall not exceed Eight Thousand Dollars $8,000.00.

1.3     "Approval Date" means the date the Court enters the Approval Order or the date on which the Approved Order is entered on the docket, whichever is later.

1.4     "Approval Order" means the Order entered by this Court approving the terms of this Agreement and the Plan of Allocation, subject to the Company's right to withdraw in writing from this Agreement pursuant to Section 18 of the Agreement, and approving the payments of Attorneys' Fees and Costs and Service Payments as set forth in this Agreement.

1.5     "Attorneys' Fees and Costs" means the payments made to Plaintiff's Counsel pursuant to paragraphs 5.1 and 5.12 of this Agreement, which shall be deducted from the Total Settlement Amount.  A total amount of Seventy-One Thousand, Six Hundred and Sixty Dollars ($71,660.00) (approximately 33.33% of the Total Settlement Amount) shall be allocated for Attorneys' Fees, and Five Thousand, Eight Hundred and Sixty-Four Dollars and Thirty-Eight Cents ($5,864.38) shall be allocated for Attorneys' Costs.  The amount of Attorneys' Fees and Costs will be determined and approved by the Court in the Approval Order.

1.6     The "Company" means Defendant RDL Energy Services, LP.

1.7     "Counsel for the Company" means Morgan, Lewis & Bockius LLP.

1.8     "Dismissal Date" means the date the Court enters the Dismissal Order or the date on which the Dismissal Order is entered on the docket, whichever is later.

1.9     "Dismissal Order" means the Order entered by this Court dismissing the Action with prejudice as to all Participating Opt-In Plaintiffs, effectuating the releases of the Participating Opt-In Plaintiffs' Released Claims, and retaining jurisdiction to enforce the terms of the Agreement.

1.10    "Initial Settlement Share" means each Participating Opt-In Plaintiff's *pro rata* share of the Net Settlement Amount, based upon the terms of this Agreement and the Plan of

Allocation.  The Initial Settlement Share shall be expressed as a range, with the low end of the range representing the *pro rata* share to the Participating Opt-In Plaintiff if all Potential Opt-In Plaintiffs become Participating Opt-In Plaintiffs and the high end of the range representing the *pro rata* share to the Participating Opt-In Plaintiffs if the Minimum Participation Rate has been met.

 1.11 "FLSA" means the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

 1.12 "Final Settlement Share" means each Participating Opt-In Plaintiff's *pro rata* share of the Net Settlement Amount based upon the terms of this Agreement and the Plan of Allocation, and based on the actual number of Participating Opt-In Plaintiff, provided that the Minimum Participating Rate is met or exceeded.

 1.13 "Last Known Address" or "Last Known Addresses" means the most recently recorded mailing address for a Potential Opt-In Plaintiff as such information is contained in RDL's records.

 1.14 "Minimum Participation Rate" means that thirty-four (34) Potential Opt-In Plaintiffs have elected to become Participating Opt-In Plaintiffs.

 1.15 "Named Plaintiff" or "Plaintiff" means Alton Caudell.

 1.16 "Named Plaintiff's Released Claims" collectively means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the Releasees, of whatever kind and nature, character, and description, whether in law or equity, whether sounding in tort, contract, federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, whether known or unknown, and whether anticipated or unanticipated, by the Named Plaintiff arising during the period beginning on Named Plaintiff's first date of employment with RDL, and ending on the date on which the Court enters the Approval Order,

for any type of relief, including without limitation, claims for wages, damages, reimbursement of expenses, costs, premium pay, penalties (including late payment penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, including, but not limited to, claims pursuant to the Age Discrimination in Employment Act ("ADEA").

1.17    "Net Settlement Amount" means the Total Settlement Amount minus Administrative Costs, Plaintiff's Service Payment, and Plaintiff's Attorneys' Fees and Costs.

1.18    The "Notice Mailing Deadline" shall be the date fourteen (14) days after the Approval Date.

1.19    "Notice of Settlement" or "FLSA Notice" means a notice entitled "Notice of Settlement" to be approved by the Court, including the Claim Form entitled "Settlement Claim Certification and Consent to Join Settlement Form" substantially in the forms attached hereto as Exhibits A and B, respectively.

1.20    "Notice Period" means the period of time beginning on the Notice Mailing Deadline and ending ninety (90) days thereafter.

1.21    The "Notice Response Deadline" shall be the date ninety (90) days after the FLSA Notice is mailed to the Potential Opt-In Plaintiffs by the Settlement Administrator.

1.22    "Participating Opt-In Plaintiff" means a Potential Opt-In Plaintiff who properly and timely submits a Settlement Claim Certification and Consent to Join Settlement Form in response to the Notice of Settlement.

1.23    "Parties" means Plaintiff and the Company.

1.24    Plaintiff's Counsel" means Berger & Montague, P.C. and Hardin & Hughes, LLP.

1.25    "Plan of Allocation" means the *pro rata* allocation of the Net Settlement Amount to Participating Opt-In Plaintiffs.   The Claims Administrator will calculate an award for Participating Opt-In Plaintiffs based on the total number of weeks that each Participating Opt-In Plaintiff worked as an air operator or in a similar position while paid on a day-rate basis by Defendant for four or more days in that workweek during the time period between March 14, 2009 and May 8, 2012.  Each week shall equal one settlement share, and the total number of settlement shares for the Participating Opt-In Plaintiffs will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure.  That figure will then be multiplied by each of the Participating Opt-In Plaintiffs' number of settlement shares to determine each Participating Opt-In Plaintiff's Settlement Award.  The formula for determining awards for the Participating Opt-In Plaintiffs shall be set forth in the FLSA Notice.

1.26    "Potential Opt-In Plaintiffs" means individuals currently or formerly employed by RDL who were assigned to work as air operators or similar positions and who were paid on a day-rate basis for at least one workweek in which they worked four days or more between March 14, 2009 and May 8, 2012.

1.27    "Reasonable Address Verification Measure" means the utilization of the National Change of Address Database maintained by the United States Postal Service to review the accuracy of and, if possible, update a mailing address, and performing address searches using public and proprietary electronic resources which collect data from various sources, such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus.

1.28    "Released Claims" means any FLSA, state and local wage and hour and retaliation claims, for any type of relief, including without limitation, claims for wages, overtime

damages, unpaid costs, penalties (including, but not limited to, late payment penalties, record keeping penalties, and meal break penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief, whether known or unknown, whether contingent or non-contingent, specifically asserted or not, which the Releasors, or any of them, may assert against the Releasees, or any of them, which were or could have been asserted in the Action for the time period any Opt-In Plaintiff worked for the Company as an air operator or in a similar position while paid on a day-rate basis by Defendant between March 14, 2009 and the date of the entry of the Approval Order, to the extent permitted by law.

1.29    "Releasees" means RDL, its present or former officers, directors, parents, subsidiaries, affiliates, owners, insurers, reinsurers, employees, agents, attorneys, accountants, executors, administrators, personal representatives, heirs, successors and assigns, and any or all of them and all persons acting by, through, under, or in concert with any of them.

1.30    "Releasors" means all Participating Opt-In Plaintiffs, for themselves, and their executors, administrators, personal representatives, heirs, successors, any future estates, assigns and beneficiaries, and any and all of them.

1.31    "Service Payment" means the payment made to Plaintiff pursuant to paragraph 5.11 of this Agreement, for his efforts in bringing and prosecuting this matter, and in exchange for the Named Plaintiff's Released Claims, and which shall be deducted from the Total Settlement Amount.  A total gross amount of Ten Thousand Dollars ($10,000.00) shall be allocated for this payment.  The Service Payment must be approved by the Court.

1.32    "Settlement Administrator" means the third-party settlement claims administration firm selected by the Parties and approved by the Court.  The Parties have agreed

to propose as the Settlement Administrator Heffler, Radetich & Saitta LLP ("Heffler") for this Court's consideration and approval.

1.33    "Settlement Check" means the check sent to each Participating Opt-In Plaintiff pursuant to paragraphs 5.1 and 6.3.6.

1.34    "Total Settlement Amount" means the amount of Two Hundred and Fifteen Thousand Dollars ($215,000).

1.35    "Updated Address" means a mailing address that was updated via a Reasonable Address Verification Measure or via an updated mailing address provided by the United States Postal Service or a Potential Opt-In Plaintiff, or any other source.

## 2.    **RECITALS**

2.1    Plaintiff has made certain allegations concerning his employment with the Company regarding an asserted failure to pay overtime compensation properly under the FLSA, which the Company has denied and continues to deny.

2.2    The Parties and their counsel have considered that their respective interests are best served by compromise, settlement and dismissal of the Action with prejudice and have concluded that the terms of this Agreement are fair, reasonable and adequate.

2.3    The Parties participated in settlement discussions that were facilitated by United States District Judge Mark R. Hornak, and, as a result of these settlement discussions, have agreed to settle the issues, matters and things in dispute between and among them pursuant to the terms of this Agreement.

## 3.    **COMPROMISE ACKNOWLEDGMENT**

3.1    Plaintiff acknowledges and agrees that this Agreement, and the consideration provided herein, have been and are made and received solely on the basis of a compromise of

disputed claims, and that this Agreement is not, and is not to be construed as, an admission by the Company of any liability whatsoever.  This Agreement is not, and shall not be construed as, an admission of any act or fact whatsoever, including any violation of federal, state, local or common law, statute, ordinance, directive, regulation or order (including executive orders). Plaintiff further acknowledges that the Company's agreement to collective treatment under the FLSA of the Opt-In Plaintiffs, for settlement purposes only, will not be deemed to be an admission or concession by the Company that collective treatment is or was appropriate in the Action or in any other action.

3.2    The Parties have exchanged information, data and documents and conducted independent investigations of the facts and law during the Action.  Plaintiff's Counsel and Counsel for the Company have further analyzed the applicable law as applied to the facts discovered regarding the allegations of the Plaintiffs, the Company's defenses thereto, and the damages claimed by the Plaintiff.

3.3    Plaintiff and Plaintiff's Counsel believe that the claims asserted in the Action have merit.  However, Plaintiff and Plaintiff's Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against the Company through trial and possible appeals.  Plaintiff and Plaintiff's Counsel have also taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in such litigation and the likelihood of protracted appellate review.  Plaintiff's Counsel have engaged in intensive arm's length negotiations with counsel for the Company with a view to achieving settlement.  Plaintiff and Plaintiff's Counsel believe that the Settlement reached confers substantial benefits upon the Plaintiff and Opt-In Plaintiffs and that the Settlement is fair,

reasonable, adequate, in accordance with the law, and in the best interests of the Plaintiff and Opt-In Plaintiffs.

3.4    The Company and Counsel for the Company believe that the claims asserted in the Action are without merit.  Thus, the Company has denied and continues to deny, specifically and generally, the claims asserted in the Action, any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Action, and it makes no concessions or admissions of wrongdoing or liability of any kind whatsoever.  The Company maintains that for any purpose other than settlement, the Action is not suitable or appropriate for collective action treatment pursuant to 29 U.S.C. § 216(b).  Although the Company has vigorously contested the allegations in the Action to date and denies that it committed any wrongful action or violation of law, it believes nonetheless that further litigation with respect to the Plaintiff would be protracted, expensive, and contrary to its best interests.  Substantial amounts of time, energy, and other resources have been and, absent settlement, will continue to be devoted to the Company's defense against the claims asserted by Plaintiff.  In light of these realities, the Company believes that settlement is the best way to resolve the disputes among the Parties while minimizing its own further expenditures.

3.5    The Parties understand and agree that this Settlement represents a compromise of disputed claims, and have agreed to enter into this Agreement to avoid the risks, costs, and delays associated with further proceedings.  Pursuant to Federal Rule of Evidence 408, and any other analogous rules of evidence that are applicable, neither the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Settlement:  (a) is or may be deemed to be or may be used as an admission or evidence of, the validity of any Released Claims, or of any wrongdoing or liability of the Releasees, or any of them; or (b) is or may be

deemed to be or may be used as an admission or evidence of, any fault or omission of the Releasees, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal.  Plaintiff and Plaintiff's Counsel agree not to argue or present any argument, and hereby waive any argument, that the Company could not contest (or are estopped from contesting) collective action treatment pursuant to 29 U.S.C. § 216(b) on any grounds if the Court fails to enter the Dismissal Order.  This Agreement shall not be deemed an admission by or grounds for estoppel against, the Company that collective action treatment pursuant to 29 U.S.C. § 216(b) in the Action is proper or cannot be contested on any grounds.

  3.6  The Parties, through their counsel, will seek judicial approval of this Agreement. In the event this Agreement is not approved by the Court, this Agreement will no longer have any effect and the Parties will revert to litigating the Action as of the date and time immediately prior to the execution of this Agreement.

## 4. CERTIFICATION OF A COLLECTIVE ACTION FOR SETTLEMENT PURPOSES ONLY

  4.1  The Parties stipulate, for settlement purposes only, to the certification by the Court of a collective action of Opt-In Plaintiffs as to all claims asserted in the Action pursuant to the FLSA.

  4.2  If for any reason the Court does not approve this Agreement, fails to enter the Approval Order or Dismissal Order, or fails to enter judgment pursuant to this Agreement, or if this Agreement is lawfully terminated for any other reason, the Company shall retain the absolute right to dispute the propriety of collective action certification on all applicable grounds.

## 5. PAYMENT AND DISTRIBUTION

  5.1  In consideration for the terms, conditions and undertakings by or relating to Plaintiff and Potential Opt-In Plaintiffs in this Agreement, and the mutual promises and

covenants contained herein, the Company will pay Plaintiff, Participating Opt-In Plaintiffs, the

Settlement Administrator, and Plaintiff's Counsel the Total Settlement Amount.  This is an

amount agreed to among the Parties to compromise, settle and satisfy the disputed claims of

Plaintiff and Participating Opt-In Plaintiffs for all back wages, liquidated damages, interest, and

attorneys' fees and costs.  The Total Settlement Amount includes Attorneys' Fees and Costs,

Administrative Costs, and a Service Payment approved by the Court.  From this Total Settlement

Amount, an award of Attorneys' Fees and Costs approved by the Court will be paid to Plaintiff's

Counsel in full and complete settlement of all claims for attorneys' fees and costs associated with

the litigation of the Action.

  5.2 Pursuant to this Agreement, the Settlement Administrator shall establish and

administer a Qualified Settlement Fund ("QSF") within the meaning of Section 468B of the

Internal Revenue Code, which may be used for the purpose of processing and paying all or any

part of Total Settlement Amount hereunder and for the purpose of reporting to federal and state

governmental tax authorities.

  5.3 The Total Settlement Fund shall be placed into the QSF within thirty (30) days

following the Approval Order.  If the Court does not enter the Approval Order, or if this

Agreement is voided pursuant to Section 18, then RDL has no obligation to place funds into the

QSF, or if the QSF has already been funded, the amount in the QSF shall be returned to RDL.

  5.4 The Settlement Administrator will be responsible for processing and printing

Settlement Checks pursuant to the Plan of Allocation and the Final Settlement Shares, and for

withholding from the Settlement Checks, reporting to federal and state taxing authorities, and

remitting to the appropriate federal and state taxing authorities all taxes required by law.  Fifty

percent of each Participating Opt-In Plaintiff's Final Settlement Share will represent payments

for liquidated damages and/or interest and will be paid subject to an IRS Form 1099, and the remaining fifty percent of each Participating Opt-In Plaintiff's Final Settlement Share will be reported as, and will be withheld upon as, wages for tax purposes.

5.5     IRS Forms 1099 shall be issued by the Company or its agent with respect to the payments made to Plaintiff's Counsel for Attorneys' Fees and Costs.  The Company or its agent will also issue an IRS Form 1099 to the Plaintiff for his Service Payment.  Plaintiff's Counsel must provide to the Settlement Administrator an executed Form W-9 in order to receive its payment of Attorneys' Fees and Costs.

5.6     The employer's share of the applicable FICA, SUTA and FUTA contributions for each Participating Opt-In Plaintiff based on the Final Settlement Share distributed to such persons shall be separately paid by the Company in addition to the Total Settlement Amount. The Company or its agent shall ensure the timely payment of all employer portions of the applicable taxes.

5.7     Any amount paid to Participating Opt-In Plaintiffs shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "RDL Benefit Plans") provided by RDL.  No payment made pursuant to this Settlement will (1) be considered as "Compensation," "Earnings," "Salary," or any similar definition under any RDL Benefit Plan; (2) require any contribution or award under any RDL Benefit Plan; or (3) modify benefits, contributions or coverage under any RDL Benefit Plan.

5.8     Other than the withholding and reporting requirements set forth above, Plaintiff and Participating Opt-In Plaintiffs shall be solely responsible for the reporting and payment of the employee's share of any federal, state and/or local income or other taxes, or any other withholdings, if any, on payments made pursuant to this Agreement.

5.9     The Company makes no representations and it is understood and agreed that the Company has made no representations as to the taxability of any payments pursuant to this Agreement, including all payments to Plaintiff and Participating Opt-In Plaintiffs Class Members and all payments to Plaintiff's Counsel.

5.10    The Settlement Administrator shall pay Plaintiff's Counsel, as a portion of the Total Settlement Amount, the amount awarded by the Court for Attorneys' Fees and Costs within five (5) business days of the Dismissal Order, provided this Agreement is not voided pursuant to Section 18.  Payments made per this paragraph shall constitute full satisfaction of any claim for attorneys' fees and/or costs, and Plaintiff and Plaintiff's Counsel, on behalf of themselves and all Opt-In Plaintiffs, agree that they shall neither seek nor be entitled to any additional attorneys' fees and/or costs relating to this Action under any theory.

5.11    The Settlement Administrator shall pay Plaintiff a Service Payment from the Total Settlement Amount in exchange for the consideration set forth in this Agreement, including but not limited to the waiver and release of Named Plaintiff's Released Claims.  Provided that Plaintiff does not revoke the release of ADEA claims pursuant to Section 18, in which case the Service Payment shall not be paid to Plaintiff, Plaintiff's Service Payment, in the amount approved by the Court, will be added to the Final Settlement Share for the Plaintiff and included in the Plaintiff's Settlement Check.  Plaintiff will receive an IRS Form 1099 for his Service Payment, which shall not be subject to withholding and/or deductions.

5.12    Except for the fees, costs and other expenses set forth in Sections 1.2 and 1.5, the Parties shall bear responsibility for their own fees, costs and expenses incurred by them or arising out of the Action and will not seek reimbursement thereof from any party to this Agreement or the Releasees.

6.    **NOTICE OF THE SETTLEMENT AND PARTICIPATION PROCESS**

6.1    *Court Approval of Notice to the Class*

6.1.1    Promptly upon execution of this Agreement, Plaintiff shall move the Court for the entry of an Approval Order:  (i) certifying a collective action for settlement purposes only; (ii) approving the terms of this Agreement and the Plan of Allocation subject to the Company's right to withdraw in writing from the Agreement pursuant to Section 18 of the Agreement; and (iii) approving the payment of Attorneys' Fees and Costs and the Service Payment set forth in this Agreement ("Motion for Approval of Settlement").  Provided it is consistent with this Agreement, Defendant will not oppose Plaintiff's Motion for Approval of Settlement, including the payment of Attorneys' Fees and Costs and the Service Payment set forth in this Agreement.

6.2    *Distribution of Notice*

6.2.1    Upon entry of the Approval Order, the Settlement Administrator will facilitate the mailing of the FLSA Notice to all Potential Opt-In Plaintiffs at their Last Known Addresses.  This FLSA Notice shall be mailed via first class mail through the United States Postal Service, postage pre-paid, with an enclosed, self-addressed, stamped return envelope included.  This FLSA Notice and its envelope or covering shall be marked to denote the return address of the Settlement Administrator.  RDL shall provide the name, Last Known Address, telephone number, Social Security Number, and total number of workweeks when each Potential Opt-In Plaintiff worked more than four days in a workweek during the time period between

March 14, 2009 and the May 8, 2012 for each Potential Opt-In Plaintiff to the Settlement

Administrator so that the Settlement Administrator can process and mail the FLSA Notices.

RDL shall provide the name and Last Known Address for each Potential Opt-In Plaintiff to

Plaintiff's Counsel, which Plaintiff's Counsel may use only for purposes of responding to

inquiries about the settlement from Potential Opt-In Plaintiffs.

       6.2.2   Prior to mailing the FLSA Notice to each Potential Opt-In Plaintiff, the

Settlement Administrator shall undertake a Reasonable Address Verification Measure to

ascertain the current accuracy of the Last Known Address of each Potential Opt-In Plaintiff.  To

the extent this process yields an Updated Address, that Updated Address shall replace the Last

Known Address and be treated as the new Last Known Address for purposes of this Agreement

and for subsequent mailings.

       6.2.3   Unless the Parties agree otherwise in writing or the Court so orders, each

of the FLSA Notices shall be mailed to the Last Known Addresses of the Potential Opt-In

Plaintiffs no later than the Notice Mailing Deadline.

       6.2.4   Unless the Settlement Administrator receives a FLSA Notice returned

from the United States Postal Service for reasons discussed below in this Section, that FLSA

Notice shall be deemed mailed and received by the Potential Opt-In Plaintiff to whom it was sent

five (5) days after mailing.  In the event that subsequent to the first mailing of a FLSA Notice

and prior to the deadline for a response, that FLSA Notice is returned to the Settlement

Administrator by the United States Postal Service with a forwarding address for the recipient, the

Settlement Administrator shall re-mail the notice to that address, the notice will be deemed

mailed as of that date, and the forwarding address shall be deemed the Updated Address for that

Potential Opt-In Plaintiff.  In the event that subsequent to the first mailing of a FLSA Notice, and

at least fourteen (14) days prior to the Notice Response Deadline, that FLSA Notice is returned to the Settlement Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.,* the envelope is marked "Return to Sender," the Settlement Administrator shall perform a standard skip trace, in an effort to attempt to ascertain the current address of the particular Potential Opt-In Plaintiff in question and, if such an address is ascertained, the Settlement Administrator will re-send the Notice promptly upon receiving such information; if no Updated Address is obtained for that Potential Opt-In Plaintiff, the FLSA Notice shall be sent again to the Last Known Address.  In either event, the FLSA Notice shall be deemed received once it is mailed for the second time.

      6.2.5   To the extent a Potential Opt-In Plaintiff has not submitted to the Settlement Administrator a Settlement Claim Certification and Consent to Join Settlement Form within forty-five (45) days of the Notice Mailing Deadline, the Settlement Administrator shall send that Potential Opt-In Plaintiff a postcard or other communication (a) referencing the name of the Action; (b) stating that the Potential Opt-In Plaintiff was mailed a Notice of Settlement; (c) providing the name, address and telephone number of the Settlement Administrator; and (d) stating the Notice Response Deadline.  The Settlement Administrator will also include a duplicate copy of the FLSA Notice in this mailing.  The reasonable costs expended in association with the preparation and mailing of the postcard or other communication contemplated by this section shall be included as part of Administrative Costs.

      6.2.6   To the extent a Potential Opt-In Plaintiff has not submitted to the Settlement Administrator a Settlement Claim Certification and Consent to Join Settlement Form within seventy (70) days of the Notice Mailing Deadline, the Settlement Administrator shall attempt to contact that Potential Opt-In Plaintiff via a second postcard or other communication as

agreed to by the Parties (a) referencing the name of the Action; (b) stating that the Potential Opt-In Plaintiff was mailed a Notice of Settlement and follow-up postcard or other communication; (c) providing the name, address and telephone number of the Settlement Administrator; (d) stating the Notice Response Deadline; and (e) stating that the Potential Opt-In Plaintiff can contact the Settlement Administrator to receive an additional copy of the Notice.  The reasonable costs expended in association with the preparation and/or mailing of the postcards or other communications contemplated by this Section shall be included as part of Administrative Costs.

6.3     *Response to Notice*

6.3.1    Potential Opt-In Plaintiffs may elect to become Participating Opt-In Plaintiffs by completing, executing, and mailing, per the instructions therein, the Settlement Claim Certification and Consent to Join Settlement Form to the Settlement Administrator postmarked by the Notice Response Deadline.  Participating Potential Opt-In Plaintiffs who, for future reference and mailings from the Settlement Administrator, wish to change the name or address listed on the envelope in which the FLSA Notice was first mailed to them and/or the Settlement Claim Certification and Consent to Join Settlement Form, must correct such information when returning the Settlement Claim Certification and Consent to Join Settlement Form to the Settlement Administrator.  The new address provided shall be the "Updated Address" for any such Participating Potential Opt-In Plaintiff.

6.3.2    Only Participating Opt-In Plaintiffs shall be entitled to payment pursuant to the Settlement and this Agreement.

6.3.3    If the Minimum Participation Rate has not been met or exceeded, the Settlement Administrator shall so advise the Parties within five (5) business days after the Notice

Response Deadline, and the Company shall have the right to terminate the settlement and the Agreement pursuant to Section 17.3.

6.3.4    Provided that the Minimum Participation Rate has been met or exceeded, the Settlement Administrator shall provide Plaintiff's Counsel with completed Settlement Claim Certification and Consent to Join Settlement Forms from Participating Opt-In Plaintiffs, with copies to Counsel for the Company, within seven (7) business days after the Notice Response Deadline.  Plaintiff's Counsel shall file with the Court, within fifteen (15) business days after the Notice Response Deadline, all Consent to Join Settlement Class Forms received and provided by the Settlement Administrator.

6.3.5    Within fifteen (15) business days after the end of the Notice Response Deadline, Plaintiff's Counsel shall file a declaration along with the declaration of the Settlement Administrator setting forth the status of the settlement and stating and attesting that all terms and provisions of this Agreement have been followed.  At this time, the parties shall also present a proposed Order regarding final judgment and a stipulated request for a Dismissal Order pursuant to the terms of the Agreement.

6.3.6    Provided that the Minimum Participation Rate has been met or exceeded, the Settlement Administrator shall determine the Final Settlement Share of each Participating Opt-In Plaintiff, and will issue Settlement Checks to each Participating Opt-In Plaintiff within five (5) business days after the Dismissal Date.

6.3.7    The Settlement Checks distributed by the Settlement Administrator to Participating Opt-In Plaintiffs will be void if not negotiated within one hundred and eighty (180) days of the date they are mailed by the Settlement Administrator.

6.3.8   The funds from any unnegotiated settlement checks shall be donated to the *cy pres* charitable beneficiary, the Pennsylvania Legal Aid Network, within fourteen (14) days after the deadline for negotiating such checks.

## 7.   **RELEASE**

7.1   Upon executing a Settlement Claim Certification and Consent to Join Settlement Form and receiving their settlement check, each Participating Opt-In Plaintiff shall be deemed to, and shall have, released and discharged all Releasees with respect to all Released Claims as set forth in paragraph 1.28.

7.2   Named Plaintiff, voluntarily and with the advice of counsel, hereby fully and forever releases, acquits, and discharges the Releasees from any and all Named Plaintiff Released Claims, as set forth in paragraph 1.16, provided that the Court enters the Approval Order and the Named Plaintiff receives his settlement check.

## 8.   **TIME PERIODS AND DEADLINES**

8.1   In computing any period of time prescribed or allowed by this Agreement, unless otherwise stated, such computation or calculation shall be made consistent with Federal Rule of Civil Procedure 6(a) as it exists at the time at issue.

8.2   If any deadlines related to this Agreement cannot be met, Plaintiff's Counsel and Counsel for the Company shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement.  In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

**9.    PARTIES' AUTHORITY**

9.1     The signatories represent that they are fully authorized to enter into this

Agreement and to bind the Parties hereto to the terms and conditions hereof.

9.2     All of the Parties acknowledge that they have been represented by competent,

experienced counsel throughout all negotiations which preceded the execution of this

Agreement, and this Agreement is made with the consent and advice of counsel who have jointly

prepared this Agreement.

**10.    MUTUAL AND FULL COOPERATION**

10.1     The Parties shall use their best efforts and agree to fully cooperate with each other

to accomplish the terms of this Agreement, including but not limited to, execution of such

documents and to take such other action as may reasonably be necessary to implement and

effectuate the terms of this Agreement.

10.2     Plaintiff, Plaintiff's Counsel, the Company, and Counsel for the Company agree

to use their best efforts to encourage Potential Opt-In Plaintiffs to accept and opt into the

settlement.

**11.    NOTICES**

11.1     Unless otherwise specifically provided herein, all notices, demands or other

communications given hereunder shall be in writing and shall be deemed to have been duly

given as of the third business day after mailing by United States registered or certified mail,

return receipt requested, addressed as follows:

To the Plaintiff:

BERGER & MONTAGUE, P.C.
Shanon J. Carson, Esquire
Sarah R. Schalman-Bergen, Esquire
1622 Locust Street
Philadelphia, PA  19103

To the Company:

MORGAN, LEWIS & BOCKIUS LLP
Christopher K. Ramsey, Esquire
Stephanie R. Reiss, Esquire
One Oxford Centre – 32nd Floor
Pittsburgh, PA  15219

## 12.   MODIFICATION

12.1    This Agreement and its attachments may not be changed, altered, or modified,

except in writing and signed by the Parties hereto, and approved by the Court.

## 13.   ENTIRE AGREEMENT

13.1    This Agreement and its attachments constitute the entire agreement between the

Parties concerning the subject matter hereof.  No extrinsic oral or written representations or

terms shall modify, vary or contradict the terms of this Agreement.  In the event of any conflict

between this Agreement and any other settlement-related document, the Parties intend that this

Agreement shall be controlling.

## 14.   CHOICE OF LAW/JURISDICTION

14.1    This Agreement shall be subject to, governed by, construed, enforced, and

administered in accordance with the laws of the Commonwealth of Pennsylvania, both in its

procedural and substantive aspects, and shall be subject to the continuing jurisdiction of the

Court.  This Agreement shall be construed as a whole according to its fair meaning and intent,

and not strictly for or against any party, regardless of who drafted or who was principally

responsible for drafting this Agreement or any specific term or condition thereof.

## 15.   COUNTERPARTS

15.1    This Agreement may be executed in counterparts, and when each party has signed

and delivered at least one such counterpart (including by email), each counterpart shall be

deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

## 16.   **PUBLIC COMMENT**

16.1    The Company, Plaintiff, Plaintiff's Counsel, and Counsel for the Company will not issue any press releases or initiate any contact with the press or media regarding the terms of this Agreement.  If the Company, Plaintiff, Plaintiff's Counsel, or Counsel for the Company are contacted by the media, they will merely inform them that the case has been resolved, and refer them to the public filings.

## 17.   **VOIDING THE AGREEMENT**

17.1    In the event this Agreement, or any amended version agreed upon by the Parties, does not obtain judicial approval for any reason, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all Parties.

17.2    In the event of any finding or ruling by this Court or an appellate court in this Action that directly or indirectly modifies or affects (a) the extent or scope of the Released Claims provided for in this Agreement; or (b) the Total Settlement Amount to be paid by the Company pursuant to this Agreement, the Company shall have the absolute discretionary right to terminate the settlement and this Agreement through written notice to Plaintiff's Counsel within five (5) business days of receipt of notice of such finding or ruling.  The above notwithstanding, the Parties agree that should the Court modify the Agreement in such a way that would otherwise cause the Company to terminate the Agreement, the Parties will, within the above indicated period, meet and confer in a good faith attempt to reach agreement and preserve the Agreement.

17.3    In the event that the Minimum Participation Rate is not met or exceeded, the Company shall have the absolute discretionary right to terminate the settlement and this Agreement through written notice to Plaintiff's Counsel within five (5) business days of receipt

of notice of that the Minimum Participation Rate has not been met or exceeded.  The above notwithstanding, the Parties agree that if the Minimum Participation Rate has not been met or exceeded such that the Company could exercise its absolute discretionary right to terminate the Agreement, the Parties will, within the above indicated period, meet and confer in a good faith attempt to reach agreement and preserve the Agreement.

**18.**    **PLAINTIFF'S CERTIFICATIONS**

18.1    Plaintiff hereby certifies that:

a)  He has signed this Agreement voluntarily and knowingly, after adequate time to review and consider this Agreement, in exchange for the consideration described herein, which he acknowledges is adequate and satisfactory;

b)  He has been advised by his attorneys and has consulted with his attorneys before signing this Agreement;

c)  He has been provided with twenty-one (21) days in which to consider the release of ADEA claims included in the Named Plaintiff's Released Claims before entering this Agreement and he may revoke the release of ADEA claims by providing written notice to the Company pursuant to Section 11 of this Agreement within seven (7) days after executing this Agreement; and

d)  Neither the Company nor any of its agents, representatives, employees, or attorneys, have made any representations to the Plaintiff concerning the terms or effects of this Agreement other than those contained herein.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Dated: June 2𝟿 2012

Alton Caudell

Dated: June ___, 2012                RDL Energy Services, LP

By: _____

Print Name: _____

Print Title: _____

APPROVED AS TO FORM:

Dated:  June ___, 2012

_____

Shanon J. Carson (ID No. 85957)
Sarah R. Schalman-Bergen (ID No. 206211)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000
(215) 875-4604 (Facsimile)
scarson@bm.net
sschalman-bergen@bm.net

David A. Hughes (ASB-3923-U82D)
HARDIN & HUGHES, LLP
2121 14th Street
Tuscaloosa, AL  35401
(205) 344-6690
(205) 344-6188 (Facsimile)
dhughes@hardinhughes.com

Counsel for Plaintiff

Dated: June __, 2012                    _____
                                        Alton Caudell


Dated: June 27, 2012                    RDL Energy Services, LP

                                        By: _James R. Powledge_____
                                        Print Name: _James R. Powledge_
                                        Print Title: _PRESIDENT / CEO___

APPROVED AS TO FORM:


Dated:   June __, 2012                  _____
                                        Shanon J. Carson (ID No. 85957)
                                        Sarah R. Schalman-Bergen (ID No. 206211)
                                        BERGER & MONTAGUE, P.C.
                                        1622 Locust Street
                                        Philadelphia, PA  19103
                                        (215) 875-3000
                                        (215) 875-4604 (Facsimile)
                                        scarson@bm.net
                                        sschalman-bergen@bm.net

                                        David A. Hughes (ASB-3923-U82D)
                                        HARDIN & HUGHES, LLP
                                        2121 14th Street
                                        Tuscaloosa, AL  35401
                                        (205) 344-6690
                                        (205) 344-6188 (Facsimile)
                                        dhughes@hardinhughes.com

                                        Counsel for Plaintiff

Dated: June ___, 2012

_____
Alton Caudell

Dated:  June ___, 2012                 RDL Energy Services, LP

By: _____
Print Name: _____
Print Title: _____

APPROVED AS TO FORM:

Dated:  June 29, 2012

_____
Shanon J. Carson (ID No. 85957)
Sarah R. Schalman-Bergen (ID No. 206211)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000
(215) 875-4604 (Facsimile)
scarson@bm.net
sschalman-bergen@bm.net

David A. Hughes (ASB-3923-U82D)
HARDIN & HUGHES, LLP
2121 14th Street
Tuscaloosa, AL  35401
(205) 344-6690
(205) 344-6188 (Facsimile)
dhughes@hardinhughes.com

Counsel for Plaintiff

Dated: June 29, 2012

_Christoph K. Ramsey_

Christopher K. Ramsey (ID No. 63293)
Stephanie R. Reiss (ID No. 88316)
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre – 32nd Floor
Pittsburgh, PA  15219
(412) 560-3300
(412) 560-7001 (Facsimile)
cramsey@morganlewis.com
sreiss@morganlewis.com

Counsel for Defendant


**SO ORDERED:**


_____

Joy Flowers Conti
United States District Judge

# EXHIBIT A

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALTON CAUDELL, individually and on behalf
of all persons similarly situated,                    :
                                                       :
                                                       :
                          Plaintiff,                   :
                                                       :     Civ. A. No. 11-01523-JFC
              vs.                                      :
                                                       :
RDL ENERGY SERVICES, LP,                               :
                                                       :
                          Defendant.                   :

NOTICE OF FAIR LABOR STANDARDS ACT SETTLEMENT

TO:  ALL INDIVIDUALS CURRENTLY OR FORMERLY EMPLOYED BY RDL
ENERGY SERVICES, LP WHO WERE ASSIGNED TO WORK AS AIR OPERATORS
OR SIMILAR POSITIONS FOR RDL AND WHO WERE PAID ON A DAY-RATE
BASIS FOR AT LEAST ONE PERIOD OF FOUR DAYS OR MORE DURING A
WORKWEEK BETWEEN MARCH 14, 2009 AND MAY 8, 2012.

I.      PURPOSE OF THIS NOTICE

The purpose of this Notice is to inform you that the Court has approved a settlement of the
claims that have been brought against RDL Energy Services, LP ("RDL" or the "Company") in
the above-captioned lawsuit, to explain the terms of the settlement to you, and to give you the
opportunity to participate in this Settlement.  **If you wish to participate in the Settlement,
please complete, sign and return the enclosed Settlement Claim Certification and Consent
to Join Settlement Form postmarked by [INSERT DATE].**

II.     DESCRIPTION OF THIS LAWSUIT

On November 30, 2011, Plaintiff Alton Caudell, who worked as an air operator while employed
by RDL, filed a complaint against RDL in the United States District Court for the Western
District of Pennsylvania.  Plaintiff's lawsuit claims that RDL violated the Fair Labor Standards
Act ("FLSA") by failing to pay him and similarly situated employees, proper overtime
compensation under the FLSA.  Specifically, the lawsuit claims that when a company utilizes a
day-rate compensation scheme (*i.e.*, paying a certain amount of compensation for each day
worked), but fails to pay proper overtime compensation for hours worked over 40 in a
workweek, the company is in violation of the FLSA, and back-pay plus liquidated damages must
accordingly be paid.  RDL denies any wrongdoing.

Plaintiff in this case is represented by Shanon J. Carson, Esquire and Sarah R. Schalman-Bergen, Esquire, whose contact information is below:

Shanon J. Carson, Esq.
Sarah R. Schalman-Bergen, Esq.
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
Telephone: (215) 875-3053
Facsimile: (215) 875-4604
Email: scarson@bm.net
Email: sschalman-bergen@bm.net

RDL in this case is represented by Christopher K. Ramsey, Esquire and Stephanie R. Reiss, Esquire, MORGAN LEWIS & BOCKIUS, LLP, One Oxford Centre – 32nd Floor, Pittsburgh, PA 15219, (412) 560-3300.

On May 8, 2012, the parties attended a settlement conference and mediation with a federal judge and as a result of that mediation, agreed to settle the claims, along with the claims of all of the other similarly situated individuals who agree to participate in the Settlement.  The total settlement amount is Two Hundred and Fifteen Thousand Dollars ($215,000.00) (hereafter "the Total Settlement Amount").  Pursuant to the Settlement Agreement, you are entitled to receive a *pro rata* share of the Total Settlement Amount (your "Settlement Share").  The range of your Settlement Share is reflected on the enclosed Settlement Claim Certification and Consent to Join Settlement Form.  The final amount of your Settlement Share will depend upon the number of individuals who participate in the Settlement.  If you do not wish to accept the Settlement, you do not have to do anything.

## III.   TERMS OF THE SETTLEMENT

The Company has agreed to pay the Total Settlement Amount to resolve all claims concerning overtime pay of RDL air operators or those who worked in similar positions for RDL and who were paid on a day-rate basis by the Company for at least one period of four days or more during a workweek between March 14, 2009 and May 8, 2012.  The Court issued an order approving the Settlement on **[INSERT DATE]**.  Under the Settlement Agreement, in exchange for payment of the Total Settlement Amount by the Company, Plaintiff's Counsel will dismiss this lawsuit with prejudice.

Once the Court enters the Dismissal Order, the Settlement will be binding on all individuals who have accepted and opted into this Settlement by submitting a Settlement Claim Certification and Consent to Join Settlement Form.  By submitting the Settlement Claim Certification and Consent to Join Settlement Form by the deadline stated in this Notice of Settlement, provided that the Court enters a Dismissal Order, you will be agreeing to release any Released Claims that you may have against RDL in exchange for your Settlement Share.  Your release applies to RDL as well as its present or former officers, directors, parents, subsidiaries, affiliates, owners, insurers, reinsurers, employees, agents, attorneys, accountants, executors, administrators, personal

representatives, heirs, successors and assigns, and any or all of them and all persons acting by, through, under, or in concert with any of them (the "Releasees"). "Released Claims" means any FLSA, state and local wage and hour and retaliation claims, for any type of relief, including without limitation, claims for wages, overtime damages, unpaid costs, penalties (including, but not limited to, late payment penalties, record keeping penalties, and meal break penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief, whether known or unknown, whether contingent or non-contingent, specifically asserted or not, which the Releasors, or any of them, may assert against the Releasees, or any of them, which were or could have been asserted in the Action for the time period any Opt-In Plaintiff worked for the Company as an air operator or in a similar position while paid on a day-rate basis by Defendant between March 14, 2009 and [**INSERT date of the entry of the Approval Order**], to the extent permitted by law.

## IV.    ATTORNEYS' FEES AND COSTS

The Company has agreed to pay and the Court has approved Plaintiff's Counsel's Attorneys' Fees in the amount of $71,660.00 (approximately 33.33% of the Total Settlement Amount) and Costs in the amount of $5,864.38, which shall be paid out of the Total Settlement Amount.  You will not have to pay attorneys' fees out of your Settlement Share or otherwise.

## V.    SERVICE PAYMENT TO NAMED PLAINTIFF

In recognition of his service as Plaintiff in filing this action, and in exchange for a general release of all claims against the Company, subject to Court approval, the Company will pay Plaintiff Alton Caudell Ten Thousand Dollars ($10,000) out of the Total Settlement Amount.

## VI.    PLAN OF ALLOCATION AND YOUR PAYMENT PURSUANT TO THE SETTLEMENT

The remainder of the Total Settlement Amount after deducting Plaintiff's Counsel's Attorneys' Fees and Costs, Administrative Costs, and the Service Payment will be allocated and distributed to the Participating Opt-In Plaintiffs on a *pro rata* basis according to the number of weeks and hours each Participating Opt-In Plaintiff worked as air operators or similar positions while being paid on a day-rate basis by RDL for at least one period of four days or more during a workweek between March 14, 2009 and May 8, 2012.  Pursuant to this Plan of Allocation, each Participating Opt-In Plaintiff has received in his/her Settlement Claim Certification and Consent to Join Settlement Form the amount or range of his or her Settlement Share.  The final Settlement Share will depend on final Court approval of the Settlement and the entry of a Dismissal Order by the Court and on the number of Participating Opt-In Plaintiffs who participate in the Settlement.  Fifty percent of each Participating Opt-In Plaintiff's Settlement Share represents payments for liquidated damages and/or interest and is being paid subject to an IRS Form 1099, and the remaining fifty percent of each Participating Opt-In Plaintiff's Settlement Share will be reported as, and is being withheld upon as, wages for tax purposes.  Neither Plaintiff's Counsel nor the Company makes any representations concerning the tax consequences of this Settlement or participation in it.

**If you do not submit your Settlement Claim Certification and Consent to Join Settlement Form by [insert date], you will not be permitted to participate in this Settlement.**

## VII.   OBTAINING PAYMENT UNDER THE AGREEMENT

To receive money from the Settlement, you must sign and return the Settlement Claim Certification and Consent to Join Settlement Form to the Settlement Administrator **by [INSERT DATE]**.  The address of the Settlement Administrator is:

[Name]
[Address]
[Address]
[Toll free number]

If you do not wish to participate in the Settlement, you do not need to do anything.

## VIII.   PLEASE DO NOT CALL OR CONTACT THE COURT ABOUT THIS SETTLEMENT

If you have any questions about the Settlement Agreement, please contact Plaintiff's Counsel using the contact information set forth above.  Please do <u>not</u> contact the Court.  You may also contact the Settlement Administrator at the address and/or phone number listed above.

## IX.   NO RETALIATION OR DISCRIMINATION

The Company will not take any adverse action against any individual because he/she participates in this Settlement.  In fact, the Company encourages you to participate in this settlement and receive your share of the monetary proceeds.

## X.   NO COURT OPINION EXPRESSED AS TO THE MERITS OF THE CASE

On **[INSERT DATE]**, the Court approved the Settlement Agreement as fair and reasonable.  The Court has expressed no opinion, however, regarding the merits of the claims asserted in this case.

## XI.   ADDRESS CHANGES

It is your responsibility to keep the Settlement Administrator apprised of your correct address.  If your address is different from the address on the envelope which contained this Notice of Settlement, please make any corrections to your address, name, and/or Social Security number on the enclosed Settlement Claim Certification and Consent to Join Settlement Form and return it to the Settlement Administrator at the address noted above.

Dated:  **[insert date]**, 2012

# EXHIBIT B

EXHIBIT B

**SETTLEMENT CLAIM CERTIFICATION AND
CONSENT TO JOIN SETTLEMENT FORM**

*Alton Caudell, et al. v. RDL Energy Services, LP*
United States District Court for the Western District of Pennsylvania (Case No.: 11-1523-JFC)

Instructions: **You must complete this Settlement Claim Certification and Consent to Join Settlement Form if you want to participate in the Settlement that is described in the Notice of Settlement ("Notice") that accompanies this form, and receive money from this Settlement.** The deadline for mailing this form to the Settlement Administrator is **[INSERT DATE]** (as evidenced by the postmark). In order to be eligible to receive a payment from the Settlement, you must complete and mail this form in accordance with the instructions in the Notice.

**I.     PLEASE PROVIDE ANY CORRECTIONS TO THE FOLLOWING
         INFORMATION**

RDL Energy Services, LP's records show the following contact information for you:

[Opt-In Plaintiff Name]
[Address]
[Address]
[Home phone no.]
[Alternative phone no.]
[Social security no.]

If any of this information is incorrect or out of date, please provide corrections below so that you can participate in the settlement described in this Notice.

Name (first, middle and last):_____
Home Street Address:  _____
City, State, Zip Code:  _____
Home Telephone Number: (____) _____
Alternative Telephone Number: (____) _____
Social Security Number: _____

**II.    YOUR WORK HISTORY AT RDL**

The amount of your settlement payment is based on the number of weeks that you worked for RDL Energy Services, LP ("RDL" or the "Company") for four or more days during the workweek as an air operator or similar position while paid on a day-rate basis from March 14, 2009 to May 8, 2012.

According to records maintained by RDL, your total estimated settlement payment (assuming you properly complete and return this Settlement Claim Certification and Consent to Join Settlement Form by the deadline) will be between $**[minimum amount]** and $**[maximum amount]** (less applicable taxes and withholding), depending on the number of Opt-In Plaintiffs who elect to participate in this settlement.

## III.   RELEASE OF CLAIMS

In exchange for my settlement payment, I, on behalf of myself, and each of my heirs, representatives, successors, assigns and attorneys, hereby fully, finally, and forever release and discharge RDL and the Releasees from any and all Released Claims as those terms are defined in Section III of the Notice.

## IV.   MAILING INSTRUCTIONS

If you want to participate and receive a payment from this settlement, please mail this completed Settlement Claim Certification and Consent to Join Settlement Form to the Settlement Administrator at the address listed below.  Your fully and properly completed Settlement Claim Certification and Consent to Join Settlement Form must be postmarked on or before **[INSERT DATE]** or else you will not receive any payment under this Settlement.  The address of the Settlement Administrator is:

> [Name]
> [Address]
> [Address]
> Phone: _____

If you have any questions about completing this Settlement Claim Certification and Consent to Join Settlement Form, please call the Settlement Administrator at [phone no.]

## V.   NON-RETALIATION

Pursuant to the Settlement Agreement, RDL will not retaliate against me in any manner as a result of my submitting this Settlement Claim Certification and Consent to Join Settlement Form.

## VI.   PLEASE SIGN THE NEXT PAGE

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements made by me on this form are true and correct, and that I have read and understand the Notice.

## CONSENT TO JOIN SETTLEMENT CLASS

By signing below, I hereby consent to becoming a party plaintiff in *Caudell, et al. v. RDL Energy Services, LP* pursuant to Section 16(b) of the Fair Labor Standards Act, and authorize Plaintiff's Counsel (as defined in Section II of the Notice of Settlement which I received together with this form) to act on my behalf in all matters relating to this action, including the settlement of my claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____          _____
Print or Type Name                                         Signature

                                                                  _____
                                                                  Date